IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

BEYOND NUCLEAR )
7304 Carroll Avenue, #182 )
Takoma Park, MD 20912 )
 )
and )
 )
DON'T WASTE MICHIGAN )
811 Harrison Street )
Monroe, MI 48161 )
 )
and )
 )
MICHIGAN SAFE ENERGY )
FUTURE ) Case No.
2033 Paw Paw Avenue )
Benton Harbor, MI 49022. )
 )
    Plaintiffs, ) **COMPLAINT FOR DECLARATORY**
 ) **AND INJUNCTIVE RELIEF**
vs. )
 )
UNITED STATES NUCLEAR )
REGULATORY COMMISSION )
One White Flint North )
11555 Rockville Pike )
Rockville, MD 20852-2738, )
 )
and )
 )
HOLTEC DECOMMISSIONING )
INTERNATIONAL LLC )
1 Holtec Boulevard )
Camden, NJ 08104, )
 )
    Defendants.. )
 )

\*  \*  \*      \*  \*  \*      \*  \*  \*

  Come now the Plaintiffs Beyond Nuclear, Don't Waste Michigan and Michigan Safe

1

Energy Future ("Plaintiffs"), and for their cause of action state:

## INTRODUCTION

1. Plaintiffs seek a declaration from the Court that an "exemption" granted by the U.S. Nuclear Regulatory Commission from the requirements of the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011–2021, 2022-2286i, and its regulations at 10 C.F.R. Parts 2, 50 and 51 which would allow the owner of a permanently shutdown commercial nuclear power plant to be restored to commercial generation of electricity is unlawful.

2. The Palisades Nuclear Plant ("Palisades") is a commercial nuclear power plant in Covert Township, Michigan, that went online and began producing electric power in 1971.

3. After operating for more than four decades, Palisades was placed on the path to shutdown and decommissioning status beginning in 2016, before permanently ending power generation activities on May 20, 2022.

4. In order to place Palisades in decommissioning status, Entergy, Palisades' proprietor at that time, submitted to the Nuclear Regulatory Commission ("NRC") certifications pursuant to 10 C.F.R. § 50.82(a)(1)(i), permitting the cessation of Palisades' power operations on May 20, 2022. Then, pursuant to 10 C.F.R. § 50.82(1)(a)(ii), Palisades' fuel was permanently removed from its reactor vessel and placed in the spent fuel pool on June 10, 2022. When those certifications were provided in connection with the decommissioning of a reactor, they legally prohibited any further operation of the Palisades reactor or replacement of the fuel into the Palisades reactor vessel.

5. Holtec Decommissioning International, LLC ("Holtec") acquired Palisades from Entergy Nuclear Operations on June 28, 2022.

6. On September 28, 2023, Holtec submitted to the NRC a request for an exemption

2

pursuant to 10 C.F.R. § 50.12, to rescind the § 50.82 certifications. Granting of the exemption would allow Holtec to submit a series of requests to amend its NRC operating license in order to ultimately receive permission from the NRC to allow Holtec to return Palisades to power operations.

7. The NRC granted the Holtec exemption request on July 24, 2025, despite the exemption not qualifying for approval pursuant to the provisions of § 50.12. The granting of the exemption was formalized in a Federal Register notice on July 29, 2025. 90 Fed. Reg. 35737.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it is a civil action arising under the federal laws of the United States, namely the Atomic Energy Act and the Administrative Procedure Act

9. Since an actual Article III "case or controversy" exists and this Court has subject matter jurisdiction under 28 U.S.C. § 1331, relief is warranted pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. See *Benson v. State Bd. of Parole and Probation*, 384 F.2d 238, 239 (9th Cir. 1967), cert. denied, 391 U.S. 954 (1968); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). This Court is further empowered to grant the necessary or proper relief pursuant to 28 U.S.C § 2202. This Court's scope of agency review is governed by 5 U.S.C. § 706.

## VENUE

10. Venue is proper under 28 U.S.C. § 1391(b)(2), because the property involved in this action, *i.e.*, the Palisades nuclear power plant complex, is located within Van Buren County, Michigan, which is within this Court's geographical jurisdiction.

## PARTIES

### Plaintiffs

3

<u>Beyond Nuclear</u>

11. Beyond Nuclear ("BN") is a not-for-profit public policy, research, and education organization based in Takoma Park, Maryland, that advocates the immediate expansion of renewable energy sources to replace commercial nuclear power generation. Beyond Nuclear has over 12,000 members. BN opposes as a matter of policy the proposed restart of Palisades Nuclear Plant. And opposes the grant of the proposed exemption. Beyond Nuclear herewith provides its declaration, agreeing to represent two of its members, W. Dillon Reed and Caroline Ferry, in this proceeding. Both have designated Beyond Nuclear to intervene to protect their interests in physical health and safety, the health and safety of their family members, and prevention of radiation contamination to their real property, and the health and stability of the physical environment proximate to Palisades. Beyond Nuclear's address is 7304 Carroll Ave., #182, Takoma Park, MD 20912, www.beyondnuclear.org.

12. W. Dillon Reed is an adult Michigan citizen who lives at 80015 Ramblewood Drive, Covert, MI 49043, which is located 0.75 straight-line miles from the Palisades Nuclear Plant ("Palisades"). His home is near Lake Michigan, and in the warm season, he walks on the beach and wades in the Lake within a few hundred yards of Palisades and goes boating with friends or relatives. He opposes the granting of an exemption by the NRC to any Holtec corporation involved with Palisades because of concerns over safety; the potential for significant damage to public health and the environment from the restart; Holtec's lack of nuclear power generation experience; and the controversial historical performance of the parent company, Holtec International. If Palisades is allowed to restart, he believes the age and condition of the plant will result in accidents resulting in radiation releases along with routine releases of radiation from an

4

operating Palisades. He believes that he and his family might suffer irreparable damage to their health as well as to real and personal property located at his residence.

13. Mr. Reed has designated Beyond Nuclear to represent his interests in this proceeding and states that they will not be adequately represented unless Beyond Nuclear is allowed to participate as a party on his behalf.

14. Caroline Ferry is an adult citizen of Michigan who lives at 79964 Fernwood Drive, Covert, MI 49043, which is located 0.75 straight-line miles from the Palisades Nuclear Plant ("Palisades"). Her home is near Lake Michigan, and in the warm season, she walks on the beach and wades in the Lake within a few hundred yards of Palisades and goes boating with friends or relatives.  She opposes the NRC's grant of an exemption to allow Palisades to restart because of concerns over safety; the potential for significant damage to public health and the environment from the restart; Holtec's lack of nuclear power generation experience; and the controversial historical performance of the parent company, Holtec International. If Palisades is allowed to restart, she believes the age and condition of the plant will result in accidents resulting in radiation releases along with routine releases of radiation from an operating Palisades. She believes that she and her family might suffer irreparable damage to their health as well as to real and personal property located at her residence.

15. Ms. Ferry has designated Beyond Nuclear to represent her interests in this proceeding and states that those interests will lack adequate representation unless Beyond Nuclear is allowed to participate as a party on her behalf.

<u>Don't Waste Michigan</u>

16. Don't Waste Michigan ("DWM") is a 40-year-old grassroots association with over 50 members in southern, western and central Michigan. DWM is located at 811 Harrison St.,

5

Monroe, MI 48161. DWM works to shut down aging, dangerous nuclear power plants in the Great Lakes Basin; to halt or block the construction of new nuclear power plants; to educate the public about the dangers of nuclear power and nuclear waste, its deadly by-product; and to block the practice of landfilling nuclear waste. DWM opposes as a matter of policy the proposed restart of Palisades Nuclear Plant. DWM opposes the grant of the proposed exemption.

17. DWM herewith provides its declaration, agreeing to represent its member Joseph Kirk in this proceeding. Mr. Kirk has designated DWM to intervene to protect his interests in physical health and safety, the health and safety of his family members, their real property, and the health and stability of the physical environment proximate to Palisades.

18. Joseph C. Kirk is an adult citizen of Michigan who lives at 29794 Lake Bluff, Palisades Park, MI 49043, which is 0.8 straight-line miles from the Palisades Nuclear Plant. His home is near Lake Michigan and in the warm season he walks on the beach and wades in the Lake within a few hundred yards of Palisades and goes boating with friends or relatives. He opposes the granting of an exemption by the NRC which would allow the restart of Palisades because of concerns over operational safety, the potential for significant damage to public health and the environment, Holtec's lack of nuclear power generation experience and the controversial historical performance of the parent company, Holtec International. If Palisades is allowed to restart, he believes the age and condition of the plant will result in accidents resulting in radiation releases along with routine releases of radiation from an operating Palisades. He believes that he and his family might suffer irreparable damage to their health as well as to real and personal property located at their residence.

19. Mr. Kirk has designated Don't Waste Michigan to represent his interests in this proceeding and states that they will not be adequately represented unless DWM is allowed to

6

participate as a party on his behalf.

Michigan Safe Energy Future

20.  Michigan Safe Energy Future ('MSEF") is a grassroots association of people in western and southwestern Michigan which since 2013 has advocated for the permanent shutdown of Palisades Nuclear Plant and replacement of nuclear and natural gas power generation with safe and renewable nonnuclear energy technologies. MSEF has a dozen members and is located at 2033 Paw Paw Avenue, Benton Harbor, MI 49022. MSEF opposes as a matter of policy the proposed restart of Palisades Nuclear Plant. MSEF opposes the grant of the proposed exemption.

21. MSEF is providing its declaration, agreeing to represent two of its members, James Scott and Ann Scott, in this proceeding. Both Scotts designated MSEF to intervene to protect their interests in physical health and safety, the health and safety of their family members, their real property, and the health and stability of the physical environment proximate to Palisades.

22. James Scott is an adult citizen of Michigan who lives at 80014 Ramblewood Hill, Covert, MI 49043, which is located 1.2 straight-line miles from the Palisades Nuclear Plant. His home is near Lake Michigan and in the warm season he walks on the beach and wades in the Lake within a few hundred yards of Palisades and goes boating with friends or relatives. He opposes the NRC's grant of an exemption to allow Palisades to restart because of concerns over safety; the potential for significant damage to public health and the environment from the restart; Holtec's lack of nuclear power generation experience; and the controversial historical performance of the parent company, Holtec International ("Holtec"). If Palisades is allowed to restart, he believes the age and condition of the plant will result in accidents resulting in radiation releases along with routine releases of radiation from an operating Palisades. He believes that he

7

and his family might suffer irreparable damage to their health as well as to real and personal property located at their residence.

23. Mr. Scott has designated Michigan Safe Energy Future (MSEF) to represent his interests in this proceeding and states that those interests will lack adequate representation unless MSEF is allowed to participate as a party on his behalf.

24. Ann Scott is an adult citizen of Michigan who lives at 80014 Ramblewood Hill, Covert, MI 49043, which is located 1.2 straight-line miles from the Palisades Nuclear Plant. Her home is near Lake Michigan and in the warm season she walks on the beach and wades in the Lake within a few hundred yards of Palisades and goes boating with friends or relatives. She opposes the granting of an exemption by the NRC to any Holtec subsidiary because of concerns over safety; the potential for significant damage to public health and the environment from the restart; Holtec's lack of nuclear power generation experience; and the controversial historical performance of the parent company, Holtec International ("Holtec"). If Palisades is allowed to restart, she believes the age and condition of the plant will result in accidents resulting in radiation releases along with routine releases of radiation from an operating Palisades. She believes that she and her family might suffer irreparable damage to their health as well as to real and personal property located at their residence.

25. Ms. Scott has designated Michigan Safe Energy Future to represent her interests in this proceeding and states that they will not be adequately represented unless MSEF is allowed to participate as a party on her behalf.

**Defendants**

26. The United States Nuclear Regulatory Commission (NRC) is an independent government agency whose headquarters  are located at One White Flint North, 11555 Rockville

8

Pike, Rockville, MD 20852-2738. The NRC has a statutory responsibility to regulate commercial nuclear power generation in such a way as to protect public health and safety. Its duties include the granting of licenses and license amendments to nuclear power facilities and nuclear waste storage.

### Holtec Decommissioning International, LLC

27. Holtec Decommissioning International LLC, 1 Holtec Blvd., Camden, N.J. 08104 ("Holtec"), is a named Defendant because Holtec is an indispensable party pursuant to Federal Rule of Civil Procedure 19. Holtec's interest in restoring the Palisades license to fully operational status is such that a final ruling and decree in this case cannot be made without affecting that interest.

### STANDING

28. Each of the Plaintiff organizations has associational standing because at least one of its members would have standing to sue in his or her own right, the interests the organization seeks to protect are germane to its purpose, and neither the claims asserted in this action nor the relief requested requires that an individual member of the organization participate in the lawsuit. *American Canoe Assoc. v. City of Louisa Water & Sewer Comm.*, 389 F.3d 536 (6th Cir. 2003). In order for a member of the organization to have standing, it must be shown that the member would suffer a probable injury-in-fact to the member's interests that is caused by the Defendant's actions complained of, and that a favorable decision in this action will redress the alleged injury. The declarations attached hereto establish satisfaction of these requirements for standing.

### STATUTORY AND REGULATORY BACKGROUND

29. The Atomic Energy Act vests the Nuclear Regulatory Commission with the authority to issue licenses and license amendments for nuclear power generating facilities such that the

9

license or amendment would not be "inimical to the common defense and security or to the health and safety of the public." 42 U.S.C. § 2133(d).

30. A nuclear power plant may cease to operate and transition to decommissioning status by complying with NRC regulation 10 C.F.R. § 50.82. That regulation provides in pertinent part as follows:

> **§ 50.82 Termination of license.**
>
> (a) For power reactor licensees—
>
> (1) (i) When a licensee has determined to permanently cease operations the licensee shall, within 30 days, submit a written certification to the NRC, consistent with the requirements of § 50.4(b)(8);
>
> (ii) Once fuel has been permanently removed from the reactor vessel, the licensee shall submit a written certification to the NRC that meets the requirements of § 50.4(b)(9); and
>
> (2) Upon docketing of the certifications for permanent cessation of operations and permanent removal of fuel from the reactor vessel, or when a final legally effective order to permanently cease operations has come into effect, the 10 CFR part 50 license no longer authorizes operation of the reactor or emplacement or retention of fuel into the reactor vessel.
>
> \*\*\*　　\*\*\*　　\*\*\*　　\*\*\*
>
> (9) All power reactor licensees must submit an application for termination of license. The application for termination of license must be accompanied or preceded by a license termination plan to be submitted for NRC approval.
>
> \*\*\*　　\*\*\*　　\*\*\*　　\*\*\*
>
> (11) The Commission shall terminate the license if it determines that—
>
> (i) The remaining dismantlement has been performed in accordance with the approved license termination plan, and
>
> (ii) The final radiation survey and associated documentation, including an assessment license termination plan, demonstrate that the facility and site have met the criteria for decommissioning in 10 CFR part 20, subpart E.

31. A nuclear plant operator may seek relief from the impact of an NRC rule by requesting an exemption from the rule, pursuant to 10 C.F.R. § 50.12, which provides in pertinent part as follows:

### § 50.12 Specific exemptions.

(a) The Commission may, upon application by any interested person or upon its own initiative, grant exemptions from the requirements of the regulations of this part, which are--

(1) Authorized by law, will not present an undue risk to the public health and safety, and are consistent with the common defense and security.

(2) The Commission will not consider granting an exemption unless special circumstances are present. Special circumstances are present whenever--

(i) Application of the regulation in the particular circumstances conflicts with other rules or requirements of the Commission; or

(ii) Application of the regulation in the particular circumstances would not serve the underlying purpose of the rule or is not necessary to achieve the underlying purpose of the rule; or

(iii) Compliance would result in undue hardship or other costs that are significantly in excess of those contemplated when the regulation was adopted, or that are significantly in excess of those incurred by others similarly situated; or

(iv) The exemption would result in benefit to the public health and safety that compensates for any decrease in safety that may result from the grant of the exemption; or

(v) The exemption would provide only temporary relief from the applicable regulation and the licensee or applicant has made good faith efforts to comply with the regulation; or

(vi) There is present any other material circumstance not considered when the regulation was adopted for which it would be in the public interest to grant an exemption. If such condition is relied on exclusively for satisfying paragraph (a)(2) of this section, the exemption may not be granted until the Executive Director for Operations has consulted with the Commission.

32. Pursuant to 5 U.S.C. § 706, the Court may "hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

11

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law."

33. An injunction may issue if the evidence shows: (1) that the plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiff and defendant; and (4) that the permanent injunction being sought would not hurt public interest. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-320 (1982).

**FACTUAL AND LEGAL BACKGROUND**

34. Holtec on September 28, 2023 submitted to the NRC a "Request for Exemption From Certain Termination of License Requirements of 10 C.F.R. § 50.82" for its Palisades Nuclear Plant located in Covert Township, Michigan. Palisades was placed on a path to decommissioning status beginning in 2017, and permanently ended power generation activities on or about May 20, 2022. Holtec purchased Palisades from Entergy Nuclear Operations on or about June 28, 2022. Holtec is now trying to remove Palisades from decommissioning status and return Palisades to active power operations.

35. Palisades initially went on line to produce electricity in 1971. Its operating license was renewed in 2006 to authorize operations through 2031. In 2016, Entergy, then-owner of Palisades, decided to cease operations by 2018, which end date was later moved to May 2022. On or about May 20, 2022, Entergy closed Palisades and placed the plant into decommissioning status. As a part of the decommissioning process, Entergy certified, pursuant to 10 C.F.R. § 50.82(a)(1)(i), that power operations ceased at Palisades on May 20, 2022, and that pursuant to

10 C.F.R. § 50.82 (1)(a)(ii), the nuclear fuel was permanently removed from the Palisades reactor vessel and placed in the Palisades spent fuel pool on June 10, 2022. Those certifications prohibit any prospective power generation operations of the Palisades reactor or placement of fuel into the Palisades reactor vessel.

36. Before the NRC can grant the exemption Holtec seeks, pursuant to 10 C.F.R. § 50.12, it must be analyzed under the explicit limitations imposed by § 50.12,(a)(2)(i-vi). Additionally, the District of Columbia Circuit has limited the granting of exemptions to "exigent circumstances":

> Section 50.12 provides a mechanism for obtaining an exemption from the procedures incorporated in section 50.10, but one that may be invoked only in extraordinary circumstances. The Commission has made clear that section 50.12 is available "only in the presence of exigent circumstances, such as emergency situations in which time is of the essence and relief from the Licensing Board is impossible or highly unlikely." [citing *Washington Public Power Supply System*, 5 NRC 719, 723 (1977)].

*NRDC v. NRC*, 695 F.2d 623 (D.C. Cir. 1982). The Commission has similarly emphasized that § 50.12 exemptions are to be granted sparingly and only in cases of undue hardship. 39 Fed. Reg. 14,506, 14,507 (1974). So Holtec bears an extremely heavy burden to justify its request for an exemption.

37. 10 C.F.R. § 50.12(a)(1) first requires that the exemption be authorized by law. In its Request for Exemption, Holtec does not cite any law that authorizes the exemption. It just says that the Atomic Energy Act does not prohibit it. Holtec also refers to a decision by the NRC that denied a request for a rule that would allow retired nuclear reactors to return to operation. The NRC decision simply found that a rule was not justified at that time. The NRC specifically emphasized that no request for restarting a closed reactor had ever been made and that reactor operators expressed no interest in adopting the requested rule. The NRC mentioned in passing that existing regulations might be available, through an exemption, to accomplish the purpose,

13

but § 50.12 was not mentioned. Given the strict application to be accorded to a § 50.12 exemption, more is required to show that the exemption is authorized by law. Indeed, the inference in § 50.12 is that affirmative legal authorization must be demonstrated.

38. A request for a § 50.12 exemption must also show that the exemption will not present an undue risk to the public health and safety and common defense and security. In an attempt to satisfy this requirement, Holtec simply states that Palisades will be returned to the condition it was in prior to decommissioning. The problem with that assertion, however, is that there were then, and continuing, significant safety problems with the plant that militated against such a conclusion. In fact, risks to the public health and safety prompted Palisades to be shut down earlier than anticipated. The attached declaration of Arnold Gundersen establishes the undue risks to public health and safety and common defense and security if Palisades is reopened.

39. Besides the foregoing requirements for an exemption, § 50.12(a)(2) lists several special circumstances, at least one of which must be present.

40. Section 50.12(a)(2)(ii) requires that application of § 50.82 in this case would not serve the purpose of § 50.82. The purpose of § 50.82 is to ensure that the reactor is certified to be in decommissioning status in order to facilitate decommissioning. Palisades has been in the process of decommissioning since June 2022. It is absurd to think that § 50.82 is not serving its purpose in this case. This is the only circumstance the NRC used to justify granting the exemption when it did so on July 24, 2025.

**CLAIMS FOR RELIEF**

41. Plaintiffs incorporate by reference and reallege herein the foregoing paragraphs 1 through 40 as if the same were set out *verbatim*.

42. The granting of the exemption as described above by the NRC violates the Atomic

14

Energy Act and the NRC's own regulations at 10 C.F.R. § 50.12. The proposed exemption effectively seeks a bypass of all substantive operating license requirements that establish a continuum of regulation from combined operating license through shutdown and decommissioning to license termination. The present commercial power plant regulatory regime does not contemplate a reversal of the decision to terminate the operating conditions of a nuclear power plant. The underlying statutory intention is that a new license application must be sought post-shutdown to ensure that a "new" nuclear power plant meets all contemporary licensing requirements and expectations.

WHEREFORE, pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, Plaintiffs request that the Court find and declare that the granting of the exemption by the NRC was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; and without observance of procedure required by law; and that consequently, Plaintiffs further request that the Court issue preliminary and permanent injunctions prohibiting the approval of the exemption requested by Holtec because Plaintiffs have suffered an irreparable injury that cannot be remedied by monetary damages, per *Certified Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007). In this case, Plaintiffs have suffered the irreparable injury of having a dangerous nuclear plant being allowed to restart, in violation of the law and regulations. Furthermore, monetary damages would not remedy Plaintiffs' injury.

The demonstrated hardship to Plaintiffs if Palisades were authorized to resume power operations significantly outweighs any hardship to the NRC or to Holtec. The NRC has no vested interest in restarting Palisades and is required to protect public health and safety. Despite Holtec's desired schedule for restarting Palisades, it has no right to its desired schedule. The

public interest is best served by effective regulation of nuclear energy.

    Plaintiffs further request that the Court award them such other and further relief as the Court deems just and equitable in the premises.

<u>*/s/ Terry J. Lodge*</u>                      <u>*/s/ Wallace L. Taylor*</u>
Terry J. Lodge, Esq.                 Wallace L. Taylor
316 N. Michigan St., Ste. 520      4403 1st Ave. S.E., Suite 402
Toledo, OH 43604-5627           Cedar Rapids, Iowa 52402
tjlodge50@yahoo.com            wtaylorlaw@aol.com

                    Co-counsel for Plaintiffs